IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MELISSA MCCULLARS,**

    **Plaintiff,**

**v.**                                                                                          **No. 16-cv-0962 SMV/GBW**

**CORY CRAYTON,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

      THIS MATTER is before the Court on Defendant's Motion for Partial Summary Judgment on Recoverable Damages, filed March 31, 2017. [Doc. 29]. Plaintiff responded on April 11, 2017. [Doc. 30]. Defendant replied on April 25, 2017. [Doc. 31]. Having considered the briefing, the record, and the relevant law, and being otherwise fully advised in the premises, the Court finds that Defendant's motion is well-taken and will be GRANTED.

## Background

      Plaintiff was the passenger in a vehicle traveling in Lincoln County, New Mexico, on the evening of April 17, 2014. [Doc. 29] at 2. Defendant, a New Mexico State Police officer, stopped the vehicle for speeding. *Id.* When he approached the vehicle, he smelled marijuana. *Id.* In the course of issuing the speeding ticket to the driver, Defendant began questioning both occupants of the vehicle. *Id.* at 3–4; [Doc. 1] at 10–11. He asked them whether they had drugs, drug paraphernalia, or large amounts of cash inside the vehicle. [Doc. 1] at 10. They responded in the negative. *Id.*; [Doc. 29] at 2–3. Defendant then asked for permission to search the vehicle.

Plaintiff replied "no." [Doc. 29] at 3. What followed after Plaintiff declined to consent to the search was a lengthy, confusing colloquy during which Defendant attempted to obtain Plaintiff's permission to search the vehicle and Plaintiff provided increasingly opaque responses. *Id.* The pertinent portion of the exchange is excerpted below.

> **OFFICER CRAYTON:** Okay, well I'm asking the questions right now. I can smell the marijuana in the vehicle. I'm asking for your consent. I'm not trying to coerce y'all or nothing. If you don't give me consent, I'm goin [sic] take the vehicle, I'm goin [sic] apply for a search warrant and if the judge grants me the search warrant, I'm going to search the vehicle. It's plain and simple how this is going to go. I could smell it as soon as I walked up to y'all. But it's your choice, yes or no.
>
> I don't want to beat around the bush, it's either, I'm asking, can I search your vehicle?
>
> **MELISSA McCULLERS:** I would prefer not to.
>
> **OFFICER CRAYTON:** So is that a yes or no?
>
> **MELISSA McCULLERS:** I mean, you're not going to find nothing.
>
> **OFFICER CRAYTON:** Is that a yes or no?
>
> **MELISSA McCULLERS:** [Inaudible]
>
> **OFFICER CRAYTON:** Okay, step out of the vehicle. Put your map down.
>
> **MELISSA McCULLERS:** It's just like all my personal stuff in here. We do live in here.

[Doc. 29] at 3. After this exchange, Defendant instructed Plaintiff and her companion to stand approximately fifty feet up the road from the vehicle. [Doc. 1] at 11. Defendant procured a "consent to search" form. Plaintiff and her companion ultimately signed the form. [Doc. 1] at 12.

Defendant and another officer searched the vehicle and found a small amount of marijuana. [Doc. 1] at 12. They also found a locked safe in the vehicle. [Doc. 29] at 4. Throughout the encounter, Defendant repeatedly told Plaintiff and her companion that they themselves were "free to go," but they were not free to take the car with them. *E.g.*, [Doc. 1] at 12–13. Defendant also contends that a K-9 was brought to the scene and "alerted to drugs in both the vehicle and the strongbox."[1] [Doc. 29] at 4. Defendant sought permission to open the safe, but Plaintiff and her companion said they did not have the key to it. Defendant told them,

> Like I said if I don't get a key to [the safe], I'm going to take it, I'll get a search warrant . . . . I'm not here to argue with you. I'm here to search and find any marijuana that I can, and with it locked like that, if you don't have a key and you're not willing to open it, you're not giving me consent, so in that order I have to get a search warrant from the court.

[Doc. 1] at 13 (quoting from a police camera video). Plaintiff's companion admitted that the marijuana found in the vehicle belonged to him. [Doc. 29] at 4. Defendant issued him citations for the traffic violation and the marijuana and released them. Defendant did not issue a citation to Plaintiff or take any other action against her at that time. Before releasing them, Defendant removed the safe and placed it in the trunk of his police vehicle. *Id.*

The following day, April 18, 2014, Defendant sought and obtained a search warrant to open the safe. *Id.*; [Doc. 29-1] at 4–5. The safe contained drugs (including oxycodone, suboxone, and buprenorphine, but not marijuana), drug paraphernalia, and other related items, including a ledger book with a list of names and phone numbers. [Doc. 29] at 4; [Doc. 1] at 14. On finding the contraband, Defendant filed a criminal complaint and an arrest warrant was

---

[1] In Plaintiff's First Amended Complaint, she notes that during the suppression hearing in her underlying criminal case, Defendant admitted that the results of the K-9 sniff "did not form the basis of the probable cause he used to search." [Doc. 1] at 13 (internal quotation marks omitted).

issued. [Doc. 29] at 5; [Doc. 29-1] at 6–10. Plaintiff was taken into custody on May 18, 2014. [Doc. 29] at 5. Plaintiff remained in custody until April 15, 2015, when she was released on bond. *Id.* at 6. On June 11, 2015, Plaintiff filed a motion to suppress the evidence of the search, on the ground that the search had not been consensual. *Id.* The motion was granted on June 15, 2015, and the deputy district attorney filed a *nolle prosequi* shortly thereafter. *Id.*

Plaintiff initiated this lawsuit in April 2016, asserting claims under 42 U.S.C. § 1983 and NMSA 1978, § 41-4-12. [Doc. 1] at 9–17. Plaintiff claims that Defendant's warrantless search and seizure violated the Fourth Amendment of the U.S. Constitution and Article II, Section 10 of the New Mexico Constitution. *Id.* at 15, 16. She alleges that as a result of the unlawful search and seizure, she "suffered personal injuries, including but not limited to, incarceration, the loss of her freedom, and having to defend against criminal charges." *Id.* at 15. She requests compensatory and punitive damages, as well as costs and attorney fees. *Id.* at 17.

Defendant filed the instant motion for partial summary judgment to limit Plaintiff's recoverable damages on her § 1983 claim. [Doc. 29]. He does not, in this motion, assert qualified immunity or contest Plaintiff's claim that the search of the vehicle and seizure of the vehicle and lockbox violated her constitutional rights.[2] Rather, he asks the Court to preclude Plaintiff from recovering damages under her § 1983 claim associated with her arrest and subsequent criminal proceedings—namely, her nearly year-long pretrial detention. *Id.* at 1–2, 8. In the main, Defendant argues that the exclusionary rule and the "fruit of the poisonous tree" doctrine, principles that apply in the criminal context to preclude the admission of illegally

---

[2] Defendant has not filed a motion to dismiss or motion for summary judgment based on qualified immunity or based on the merits of Plaintiff's claim that Defendant violated her constitutional rights. He notes at the outset of the present motion that he does, however, intend to challenge the substance of Plaintiff's claim. [Doc. 29] at 1 n.1.

4

obtained evidence, do not apply in the context of § 1983 civil actions. *Id.* at 9–12. Therefore, he contends, the unconstitutional search of the vehicle and seizure of the vehicle and lockbox do not taint the subsequent search of the safe and arrest of Plaintiff, both of which were carried out pursuant to warrants issued by an independent magistrate based on a finding of probable cause. Because these *lawful* actions, and not the prior unlawful actions, led to Plaintiff's detention, Defendant claims he cannot be liable for the damages stemming from that detention. *Id.* Relatedly, Defendant contends that a number of independent judicial determinations—the determination that there was probable cause to search the safe, the determination that there was probable cause to arrest Plaintiff, the determination to detain Plaintiff pending trial, and subsequent judicial determinations respecting her continued detention and trial schedule—are intervening actions that preclude Plaintiff from establishing proximate cause, a requirement to recover damages in a § 1983 suit. *Id.* at 13–16. Finally, Defendant contends that Plaintiff waived the right to seek damages for her detention because she delayed asserting her constitutional rights in her criminal trial (i.e., filing the motion to suppress) until after she was released on bond. *Id.* at 16–17.

Plaintiff argues that, in the Tenth Circuit, a defendant in a § 1983 action based on an unlawful search or seizure can be held liable for the damages that flow from the search or seizure, including detention and the costs of defending against criminal charges. Plaintiff relies almost exclusively on a single case from this District (though Plaintiff mistakenly characterizes it as a decision by the Tenth Circuit Court of Appeals) in support of her position. [Doc. 30] at 2–7 (citing *Train v. City of Albuquerque*, 629 F. Supp. 2d 1243 (D.N.M. 2009)). She argues that *Train* dictates that such damages are available to plaintiffs upon a showing of proximate cause,

the determination of which is a question of fact left to the jury. She further contends that Plaintiff could not have waived her right to assert a constitutional claim here by not raising it earlier in the criminal court proceedings. *Id.* at 7–10. She argues that the requisite statute of limitations governs the time within which a party must assert her constitutional claims; that Defendant's reliance on speedy trial case law is inapposite here; and that that waiver of a substantive right generally requires a finding that the waiver was knowing, intelligent, and voluntary. *Id.* Plaintiff also suggests that, as a policy matter, damages flowing from an unconstitutional search or seizure should be recoverable in order to hold officers accountable for their unlawful conduct. *Id.* at 10–11.

The Court assumes without deciding, for purposes of this analysis, that Defendant violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures by searching and seizing Plaintiff's vehicle and seizing the lockbox. The narrow issue the Court must decide is the scope of injury—and thus, the scope of recoverable damages—arising from that unconstitutional search and seizure. The Court must decide whether Plaintiff may recover damages for the injuries that occurred following the search of the lockbox and her arrest—namely, damages relating to her pretrial detention. The Court finds that Plaintiff is not entitled to recover such damages.

## **Summary Judgment Standard**

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of establishing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial.  *Id.* at 324.  A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Although all facts are construed in favor of the non-movant, the non-movant still has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment."  *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

## Damages Under § 1983

Under § 1983, individuals may recover damages for violations of their Fourth Amendment rights.  *Carey v. Piphus*, 435 U.S. 247, 254–55 (1978).  The statute itself is silent as to the kind of damages that may be awarded.  The Supreme Court has stated that principles of tort law provide the "appropriate starting point" for the inquiry into the damages allowable in a § 1983 action.  *Id.* at 258.  That is, where a constitutional right sufficiently comports with an interest protected in tort law, the court may apply the applicable tort damage rule directly.  *Id.*  However, some constitutional rights "may not also be protected by an analogous branch of the common law torts."  *Id.*  In such cases, the court is tasked with "adapting common-law rules of damages to provide fair compensation for injuries caused by the deprivation of a constitutional right."  *Id.*  At bottom, damages in a § 1983 action "should be tailored to the interests protected by the particular right in question—just as the common-law

rules of damages themselves were defined by the interests protected in the various branches of tort law." *Id.* at 259.

The Tenth Circuit has not passed on the allowable scope of damages stemming from illegal searches and seizures. The circuits to have decided the issue have reached different conclusions. For example, in *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999), the Second Circuit concluded that the claimed injury—violation of the "Fourth Amendment right to be free from unreasonable searches and seizures"—did not fit the damages sought— "compensation for . . . conviction and incarceration" stemming from the failure to suppress evidence that was unlawfully obtained. *Id.* at 147. Among other reasons, the court found a "gross disconnect" between the protections enshrined in the Fourth Amendment (namely, privacy) and the injury that results from the discovery of incriminating information. *Id.* at 148. "The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime . . . ." *Id.* The Third Circuit reached a similar conclusion, holding that "damages for an unlawful search should not extend to post-indictment legal process, for the damages incurred in that process are too unrelated to the Fourth Amendment's privacy concerns." *Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2000).

Other courts have taken a broader view of the interests enshrined in the Fourth Amendment and the scope of allowable damages stemming for an unlawful search. In *Train v. City of Albuquerque*, the Honorable James O. Browning, United States District Judge, reasoned that courts considering allowable damages under § 1983 should not be constricted by whether an analogous common law tort would permit recovery. 629 F. Supp. 2d at 1251–52. In that case, the plaintiff had been the victim of a warrantless search of his apartment. The search

revealed an unlawful weapon. The plaintiff was later indicted on federal charges for felon in unlawful possession of a firearm. In his criminal case, Train filed a motion to suppress evidence of the firearm based on the argument that the entry and search of the apartment was unlawful. That motion was granted, and the charges were eventually dismissed. In the meantime, Train spent ten months incarcerated in a federal facility. In his subsequent § 1983 action against the City of Albuquerque and the officers who conducted the search, he sought to recover damages for the cost of defending himself against the federal criminal charges, as well as lost wages and emotional distress damages stemming from his detention.

The defendants filed motions in limine seeking to exclude evidence of Train's incarceration, arguing that damages for an unlawful search should not extend to post-indictment legal process. In ruling on those motions, Judge Browning found that the Tenth Circuit has identified liberty, property, privacy, and sense of security and individual dignity—not just privacy alone—as the interests the Fourth Amendment protects. *Id.* at 1252 (citing *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1196 (10th Cir. 2001)). Because these interests were implicated by the injuries flowing from the post-indictment legal process, he found that plaintiff could, upon a showing of proximate cause, recover damages stemming from such injuries in his § 1983 action. *Id.* The court went on to hold that whether an intervening cause, such as a prosecutor's or judge's independent decision, cut off liability (i.e., whether the plaintiff had established proximate cause) was a question of fact for the jury to decide. *Id.* at 1253. As the court in *Train* pointed out, an earlier Ninth Circuit decision had reached the same conclusion. *Borunda v. Richmond*, 885 F.2d 1384, 1389–90 (9th Cir. 1988) (holding that plaintiffs could recover the costs of defending against their criminal prosecutions on a finding that the injury was

proximately caused by the unlawful search that gave rise to the criminal proceedings); *see also Kerr v. City of Chicago*, 424 F.2d 1134, 1141 (7th Cir. 1970) (stating without further analysis that "a plaintiff in a civil rights action should be allowed to recover the attorneys' fees in a state criminal action where the expenditure is a foreseeable result of the acts of the defendant").

## Analysis

Without deciding whether, as a categorical matter, a party may ever recover post-arrest damages in a § 1983 action based on an unlawful search and seizure, the Court concludes that Plaintiff is not entitled to recover such damages in this case. Plaintiff was arrested pursuant to an arrest warrant, which was issued following the discovery of contraband during the search of the lockbox, which itself was conducted pursuant to a search warrant. Plaintiff does not contend that the search warrant Defendant obtained to search the lockbox was invalid. Nor does Plaintiff contend that the arrest warrant Defendant obtained based on the evidence recovered from the lockbox was invalid. Defendant may not be held liable for the injuries that resulted from these lawful acts, even though they were carried out pursuant to information obtained by virtue of Defendant's earlier unlawful acts (the initial search and seizure).

Whether prior unlawful acts may taint subsequent lawful acts implicates the exclusionary rule and the fruit of the poisonous tree doctrine. The exclusionary rule precludes the government from using evidence acquired during an unconstitutional search and seizure in a criminal prosecution against the victim of the unconstitutional action. *United States v. Calandra*, 414 U.S. 338, 347 (1974). The "fruit of the poisonous tree" doctrine extends the exclusionary rule to evidence that was obtained as a result of the illegal search and seizure, unless the evidence is so far removed from the constitutional violation that the taint of the violation no longer clings to it.

*Wong Sun v. United States*, 371 U.S. 471, 484 (1963).  Whether the evidentiary "fruits" stemming from an unlawful search are admissible depends on whether such evidence "has been come at by exploitation of [the underlying illegal search] or instead by means sufficiently distinguishable to be purged of the primary taint."  *United States v. Olivares-Rangel*, 458 F.3d 1104, 1109 (10th Cir. 2006) (quoting *Wong Sun*, 371 U.S. at 488).  The exclusionary rule is not a personal constitutional right of the victim of the unconstitutional activity, but rather a "judicially created means of deterring illegal searches and seizures."  *Penn. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363 (1998).

There appears to be a consensus of opinion that the exclusionary rule and fruit of the poisonous tree doctrine do not apply to § 1983 actions.  *E.g.*, *Townes*, 176 F.3d at 145–46; *Lingo v. City of Salem*, 832 F.3d 953, 958–959 (9th Cir. 2016); *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016); *Wren v. Towe*, 130 F.3d 154, 1158 (5th Cir. 1997) (per curiam); *Machado v. Weare Police Dep't*, 494 F. App'x 102, 106 (1st Cir. 2012) (per curiam); *Hector*, 235 F.3d at 158–60; *Galicia v. United States*, 13-cv-0105 MCA/LAM, [Doc. 92] at 10–11 (D.N.M. Feb. 24, 2015).  "[T]he lack of probable cause to . . . search does not vitiate the probable cause to arrest on the basis of evidence found in that search."  *Lingo*, 832 F.3d at 960 (alternation in original) (internal quotations omitted); *see also Penn Bd. of Prob.*, 524 U.S. at 362 ("We have emphasized repeatedly that the governments' use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution.").  The fruit of the poisonous tree doctrine "is not available to elongate the chain of causation" in the § 1983 context.  *Townes*, 176 F.3d at 146.  Thus, unlawfully obtained information may be put to a lawful purpose.

Following Defendant's search of the vehicle, Plaintiff was free to go. She had not been arrested nor issued a citation. True, Defendant seized the lockbox as a result of that initial unlawful search. But the search of the lockbox itself was based on a warrant issued by a neutral magistrate. And Plaintiff's arrest was based on a warrant issued by a neutral magistrate. Because the fruit of the poisonous tree doctrine does not apply in the § 1983 context, the information obtained from the initial unconstitutional search and seizure does not taint these subsequent lawful events. The damages Plaintiff seeks—those relating to her pretrial detention—arose from a second, lawful search and arrest. Plaintiff may not recover such damages.

Though Plaintiff stresses the factual similarities between this case and *Train*—the case on which Plaintiff exclusively relies—the facts here are more akin to those in *Dalcour v. Gillespie*, 2013 WL 2903399 (D. Colo. June 14, 2013) (unpublished), a decision of the District of Colorado that distinguished the holding of *Train*. In *Dalcour*, the defendant police officer was told by a child services caseworker that Mr. Dalcour might be present in the home of two children and their mother in violation of a court-issued order of protection. The officer went to the home and attempted to check on the welfare of the children. The mother answered the door but refused to allow the officer to enter. The officer put her foot in the doorway and was able to ascertain that Mr. Dalcour was in the home. Other officers arrived, and based on the information that Mr. Dalcour was present in the home in violation of the court order, a second officer decided to forcibly enter the home. The officers did force entry into the home. They arrested Mr. Dalcour and the mother. *Id.* at *1.

Eventually, the Tenth Circuit Court of Appeals determined that when the first officer put in her foot in the door, her actions constituted an unlawful search. *See id.* at *2. However, the court also held that the forced entry was not unlawful because the second officer reasonably believed that they had authority to enter. *See id.* at *2, 7. On remand, the district court considered whether the plaintiffs could recover under § 1983 for injuries they sustained as a result of police officers' second, lawful entry into their home following an initial unlawful entry. *Id.* at *5–7.

The court held that, because the exclusionary rule and fruit of the poisonous tree doctrine did not apply, "there is no legal reason why [the officer] could not convey what she had learned[, i.e., that Mr. Dalcour was in the home] (albeit through wrongful conduct)" or why the officers could not rely on that information. *Id.* at *6. The court reasoned: "Even if the [second] forced entry can be said to have been proximately caused by" the first officer's initial unlawful entry, "the fact remains that the [second] entry was lawful." *Id.* at *7. The court distinguished *Train* on that basis:

> *Train* properly found that the plaintiff was entitled to recover for all injuries that proximately flowed from that unlawful search. Here, although [defendant's] initial "search"—the foot in the doorway—may have been unlawful, the chain of causation is broken by a lawful subsequent search and arrest. The Plaintiffs cannot recover for injuries that arise from lawful conduct simply because it was preceded by unlawful conduct.

*Id.* at *7.

The present case is distinguishable from *Train* on the same basis. Just as in *Dalcour*, the unconstitutional search and seizure in the instant case gave way to a *lawful* search and arrest, both based on warrants issued by a neutral magistrate. Plaintiff cannot recover for injuries that

13

arose from lawful conduct simply because the lawful conduct was preceded by unlawful conduct. This holding is in line with authority stating that the findings of an independent magistrate are, as a matter of law, superseding events that disrupt proximate cause. *See Hector*, 235 F.3d at 163 (Nygaard, J., concurring) ("[T]he magistrate issued a search warrant before the officers recovered the contraband, and this act of independent judgment breaks the chain of causation between the illegal detention and [the plaintiff's] subsequent legal costs."); *see also, e.g., Townes*, 176 F.3d at 146 (trial court's refusal to suppress the evidence from the unlawful search constituted an intervening and superseding cause of the plaintiff's conviction and incarceration, for which he sought damages); *Barts v. Joyner*, 865 F.2d 1187, 1196–97 (11th Cir. 1989) (intervening acts of prosecutor, judge, and jury broke the chain of causation).[3]

## Conclusion

Plaintiff's arrest and pretrial detention arose from a second, lawful search performed following the initial unlawful search and seizure. Plaintiff is therefore not entitled to recover damages flowing from her arrest and pretrial detention. Defendant's Motion will be granted.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant's Motion for Partial Summary Judgment on Recoverable Damages [Doc. 29] is **GRANTED.**

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**

---

[3] To be sure, a neutral magistrate's independent judgment will not break the causal chain if the officer misled or pressured the magistrate. *See Robinson v. Maruffi*, 895 F.2d 649, 655–56 (10th Cir. 1990). Plaintiff makes no such claim in this case.